on behalf of the F.O.O.N.S., Mr. Paul J. Glazer, on behalf of the people, Mr. James Frank. Thank you, Mr. Glazer. Good morning, Your Honor. I just want to please the court, counsel. Before I begin, I'd like to just introduce the court's attorney, Ann Fick, at the counsel table. Ann was a volunteer law student who did the brief in this case, or helped with the brief in this case voluntarily this past summer or spring. And she's been delieved, passed the bar exam, delieved sworn in, so she's an attorney now, so I thought I'd invite her to sit at the table with me. Michael Gabriel appeals his conviction for the violating order of protection. Among other conditions, the order here required Mr. Gabriel to stay away from Riley Nichols, expressly defining stay away as me making no physical or non-physical contact with Nichols while she was at her school at the College of DuPage. The question here is where the state failed to prove Nichols was, in fact, present at College of DuPage when Mr. Gabriel was arrested in the parking lot there on Monday morning in November of 2012. Was he proven guilty beyond a reasonable doubt? We say no. Now, he was proven guilty, apparently, according under 2A of the order. Right.  Well, I think we, the cases from this court say that because of an order of protection is part of the, the order of protection is actually part of the offense. The person is charged with violating order of protection, which makes the order of protection part of the offense, part of the statute. So will the statutory interpretation apply when one construes the order of protection? The 2A is the more general, or 2B, I mean, we look at what's the more, the basic rule of statutory instruction is the specific controls the general. And the specific here would say that my client was prohibited from entering, from being at College of DuPage while she's there. That's the whole purpose of this stay away order. The order protects people, not places, if I can borrow a fourth amendment line here. But is that, that's consistent with the language of the statute that you just said, right? It's consistent with the language of the order of protection, yes. That he has to be, he can't be there when she is present at the college, their school located at College of DuPage 425 Fayetteville Avenue. All right, and that's what 60-214-B3 provides, right? If that's the Domestic Violence Act, I think. Right, it's a stay away provision for domestic violence. Correct. Well, again, the stay away is defined in the order of protection. It means to stay away from physical and non-physical contact with the petitioner. Well, I think the purpose of my asking that was to have us also, as you're answering Justice Burke's question, making your argument, look at whether the order of protection and the language there is consistent with the statute as well. Well, again, my client is charged with notice, and the notice he's provided is in this order. And if the order doesn't apply with the statute, then that's an entirely different question, because this is what he's charged with having to comply with. Is it the same for her residence? I mean, is your argument the same that the specific applies over the general for the residence? The specific applies over the general. Again, the thing here is that Ms. Nichols was not on the college property. If my client had gone to the residence when she was there, obviously it's a violation. If she was on the property of the college, it would be a violation. But because she's not there, again, it's not an absolute liability offense. There has to be an element of intent. Unintentional, accidental conduct is not prohibited by the violation, by the order here. The Rear case, there's a couple cases in this court that provide some very good authority and direction for this court here. In Rear, back in 2005, the court looked at a number of factors which were set up in the case, Mandage case, to interpret a violation of the protection order. Some factors are the size of the public area. College DuPage is obviously a very large campus. A lot of people are there. It's not like the defendant went to, well, again, it's all very difficult because Nichols wasn't there. So all the examples I'll give you don't really help a whole lot because she wasn't there. But the public area is very large, and it's a big squash of land in the middle of Glen Ellyn, and hard to get around. Number of people present. The officer who arrested my client said there were 200 other cars in the parking lot that my client was seen in. Your cases that you cited, though, Rear and the other one, had to do with somebody being in the same public area but that's not listed on the order of protection, correct? Like a shopping store. Correct. Rear was directed to stay away from the protected part, I guess the petitioner would be. But went shopping at a K-Mart across the street from where she lived. And his defense was while he was shopping for something that wasn't at some other stores, the petitioner happened to walk up by him, and he supposedly sent some threats to her. And they charged him with violating the V.O.P. Again, what distinguishes that from this case is that the defendant in that case actually made physical contact, or his presence, with the petitioner. It's hard to get the petitioner and defendant straight here. In my case, in our case here, the petitioner is not even present. So there's no contact whatsoever. He didn't go to the College of DuPage with a sign saying J. Lee Nichols is whatever, whatever. He just went there, according to the police officer, to drop off a friend, a male friend. And there's no evidence whatsoever that that's a made-up story. There's no proof to rebut that. That was his purpose for being there. His length of time being there, the officer only saw him for four minutes. Again, there's no evidence as to how long he was there, but most we can tell from this record he was there for four minutes. Should he have known or did he know that the protected party was present? Again, no evidence on this. The state simply went as if this was an absolute liability offense. He was arrested on College of DuPage grounds, and that was enough for his judgment, but it's not enough under cases like Reeder and David. There's also a remark by the court in the Mandich case, which set out all these factors, that said that in that case the Mandich apparently went to a church service and made some contact with the children who were named in the protective order. There's a line in that decision that says, well, one thing if he went to a big cathedral with thousands of people and didn't make contact with the children, but here he actually made, it was a smaller church, and he actually did make physical contact with the children. Here there is no contact with this woman at all. We don't know anything about Nichols. We don't know when she attends school. We don't know if she attends school at night, whether she attends during the day. We don't know what her situation is. One of the arguments of the state is that that would then cause the petitioner to in some way keep the respondent notified of when she would be on the premises, like her class schedule, so to speak, and really that's kind of defeating the purpose of an order of protection, that the person who is allegedly abusing or is abusing someone knows where they're going to be. The burden shouldn't be in the petition. The burden should be in the state in a prosecution for violating an order of protection to present evidence. And had the state presented evidence that Nichols did in fact attend College of Page during the day and was on school property at that moment, then the state would have carried their burden of proof. That's the problem here. And it's not that we want to make life tougher for Ms. Nichols. We don't care about Ms. Nichols here. We care about the state, whether the state can meet its burden of proof, and they didn't. They just walked in with a, we arrested him on property, therefore he's guilty. That's not how it works. Well, if you read the order of protection, 2A, literally it says he's supposed to stay away from that area, whether she's there or not. If you read 2A in isolation, and him going to that area would certainly show his intent to go to that area. So, I mean, you've proven your case if you read 2A the way the trial court read 2A. Except you can't read 2A ignoring 2B. That's another rule of construction. You have to read the whole thing so it makes some sense. Otherwise, it would be superfluous. Also, the definition of stay away means to refrain from both physical presence and nonphysical contact. My client made, there's no physical presence, and there was no nonphysical contact. He didn't e-mail her, didn't text her, didn't call her, didn't put a sign up in the parking lot. But aren't they, if you read them together, they're ambiguous, aren't they? I mean, you've got A that says stay away from the specific place, and we have B that says, well, stay away from the specific place, but only when the petitioner is there. And that's where David and Reher and Bandage say there's ambiguity. The rule of lenity has to apply. And applying the rule of lenity to the interpretation of this protection order means the state failed to prove their case beyond a reasonable doubt. Your argument, if he had been parked in her driveway under this same order of protection, you're saying that the state, and she wasn't there. No, I don't know if she was there, but in the driveway of her home, he would not be in violation of this order of protection. If I'm not confusing the cases, I think that's David, where the defendant went to the front yard of the house, and there was a discussion about whether the front yard, the lot, was part of the residence. And, again, this court, majority of this court, said it's ambiguous. We're going to rule in favor of the defendant. Again, if she's not there, the order of protection doesn't protect the property. There's no indication that my client's done things to property that requires an order of protection for that. It's to keep him away from Riley Nichols. He was away from Riley Nichols from all we can tell in this record, and that's why this court should reverse the judgment. Well, B does, is different than A. That is, the section B2 of the statute has different language than B3, and it appears that at least the statute authorizes prohibiting a respondent from being at the residence, even if the petitioner isn't there. And the claim doesn't appear on this order. Right. So, I mean, there may be some problems with the order aside from her argument. Well, our biggest problem is the best thing to be said is that it's ambiguous, and if it's ambiguous, then this court should reverse the judgment. Anything else? No. Thank you, Your Honor. I suppose you don't have time for rebuttal, I do. Mr. French, you may proceed.  I'll make my rebuttal. You may proceed. Thank you. May it please the Court, Your Honors, Counsel, in this case, the evidence against the defendant is clear, the evidence against the defendant is compelling, and the evidence against the defendant is uncontroverted. Well, we know the defendant was served with an order of protection. Well, let's take that order of protection. Sure. I'm the defendant, okay? I'm Mr. Gabriel, and I get this order of protection. I say, okay, here's what I can do and here's what I can't do. Most importantly, here's what I can't do. I can't go within a thousand feet of her school. And I can't go near the premises of her school when she's there. How do I read that? And why is 2B there? Why isn't 2B just crossed off into a circle? And I understand what Your Honor is saying, but in the State's opinion, it's not confusing. Because both A and B are telling the defendant the same thing. Don't go to the school. Don't enter the school. Don't go within a thousand feet of the school. It's basically telling him every way from Sunday, you are not allowed to go to the college. It's basically telling him I can't drive down whatever that street is that goes right through the College of DuPage at 3 a.m. on a Saturday morning or Sunday morning. I can't drive through there because I'm within a thousand feet of the school. Correct. So even though there's not a car in the lot, not a person on the premises, in the middle of a blizzard at 3 a.m. on a Sunday morning, I am in violation of this order of protection. Yes, and I think that's true in here. Excuse me, but then is the language under B here, entering or remaining while petitioner and or protected persons are present, is that superfluous? That language doesn't have to be there. Is that superfluous language then? Your Honor, I don't think it's superfluous. But if it were superfluous, I don't see, in the State's opinion, we don't see what the problem is with that. Well, because the problem says while petitioner is there. So as Justice Burke asked, what is the defendant to think? The defendant is to think that you've been told twice to stay away from this area. If the petitioner is there, at least one of the sections says. One of the qualifiers. Correct, and I understand that. And Section A is really more restrictive than Section B because you have to stay 1,000 feet away no matter what. And back to my point is even if it were superfluous, the State doesn't see what the problem with that is. In the Perry case that we cited in our brief, that case says when the language of the statute is clear, it will be given its effect without resorting to other tools of statutory construction. In the State's opinion, it's clear. The defendant was told two separate ways. Don't go to the College of DuPage. Well, that's the language of the order. Correct. The order has to be based on the statute, correct? I believe so, yes. So in the section pointed out by Justice Zinoff, 214B3, that's the stay away provision. And the stay away provision reads that order the respondent to stay away from the petitioner or any other protected person, prohibit respondent from entering or remaining present at the petitioner's school at times when the petitioner is present. Now, B2 talks about residence. It doesn't have that qualifier in there. Correct. So with a residence, according to the statute, at least the plain language, or it appears to be, you can order someone to stay away from the residence whether they're there or not. But if you're talking about a public place, you can only order them to stay away when the petitioner is present. I understand your argument, Judge, and I have— Well, it's not an argument. It's a question. I'm not arguing for or against anything. And I have two separate responses to that, if I might. The first is I don't think that that was an argument brought by the defendant in their brief, that the order of protection and the complaint here does not comport with any portion of the Domestic Violence Act. That being said, I think when you read the Domestic Violence Act in its totality and you see the intent of the legislature when doing it, the intent is, and they list it out specifically, to avoid abuse and specifically to our inquiry here to reduce access of defendants to victims. And that's what we have here in this form approved by the Conference of Chief Circuit Judges here in Illinois. It's a statewide form. It's not a county or DuPage form. They are promoting the intent of that legislature. They are telling this defendant two separate ways. Don't go to her school. And what did he do 12 days later? He went to her school. And our argument is, in accordance with the trial courts, that under Section A, it's a Section A violation. He went there. We didn't need to prove, people didn't need to prove that she was there. He violated this order, so he was brought to court. And you would agree that you didn't prove that she was there? Oh, yeah, we're not arguing. Okay, so, I mean, it's under A or it's nothing, right? Right. And if I could briefly respond to the cases that were brought up by counsel. Yeah, let's start with Davit. Why isn't Davit in control here where if we have an arguably ambiguous order that the rule of lenity applies? Because, Your Honor, as I said before, I don't, I can see, it's not confusing when you look at it practically. When you look at this order practically, someone who reads it for the first time says, I can't go within 1,000 feet of this school. And I also can't go to this school at all when this person is there. We're telling him two separate times, don't go to this school. I don't think that the language is unclear. Well, you're telling him two separate, you're telling him twice but in two different ways. And you're saying two different things, I guess is what I'm saying. You're telling him twice but you're telling him two different things, in A and in B, based on the black and white here. Yeah. I think that's the problem. And B says while petitioner is present. A does not say that. Correct. That's the problem. And adding to the ambiguity theoretically, the whole thing is captioned under two, stay away. And then there's a box there that's set out, highlighted, so you really should read this because it's in a box. And it says stay away means stay away from the physical presence or the nonphysical contact with the petitioner. So, again, both 2B and what's in the box and the heading seem to contradict what I would agree with you is clearly stated in 2A. Correct. And I did briefly speak about that in my brief, going over the definition of presence, and it does apply to both places and people. So I think, I mean, obviously, one would assume the Chief Judges use very specific language here and thought that the stay away provision would allow someone to use it for both the person and a place. And that's what, Your Honors, I just want to emphasize that that's what we're arguing here. This is a 2A violation. The defendant was told to stay 1,000 feet away from the school. He didn't do that. He was appropriately found guilty of that because he violated that 2A. If you read it with B, our argument is that we told him twice to stay away, and he didn't. And when you read both of those in accordance with the entirety of the domestic violence act, with the intent to reduce someone's access to their abuser, which has been found by a court, which is why this order of protection has been instituted, that, I mean, Your Honors have to consider the intent there. I mean, if this was a Venn diagram, 2A would be this big circle, and 2B would be a smaller circle completely within 2A. I would agree with that. Then why do we have 2B? It's totally unnecessary. It's totally superfluous. I understand. There are situations where, I mean, basically in 2B you can put, you know, the stores a person likes to go to, you can put, you know, you can put anywhere in the world, essentially, in 2B. 2A limits you to residents, the places that are listed there. 2B gives you the ability to put, you know, wherever an important place is to this victim, that we need to reduce this defendant's access to the victim at those places. As does 2A. As does any other specified place. But 2B gives you the ability to actually specify those places. So if some other location was listed, let's say some place where, I don't even know, a park that the person goes to, and that was listed in 2B, would you agree that then the person would have to be present at the park, or would that be also assumed within 2A as another specified place? That's a very good question. Well, if it's ambiguous for you, a lawyer, a highly trained individual, Mr. John Q. Public, who gets one of these, what is he supposed to do? I don't think it is ambiguous because that's what 2A says. It's a specified place. You're on notice now what these specified places are. 2B, in addition to 2A, lets that person know what is the school. The school is College Road and Page. What is the residence? The residence is located at 115 College Avenue, which were the facts here. I can see where Your Honor is going with that. But someone who sits down and reads this order says, I'm supposed to say 1,000 feet away from the school. What's the school? The school is the College of DuPage. And that's what we have here. Then the B should be taken out, and it all should be under A. And then, I mean, this whole thing really, I think, needs to be redrafted. But anyway, to clarify what we've been talking about today. And again, Your Honors, if the defendant's argument is that B is just superfluous, then that, I guess, duplicative statement to the defendant to stay away from the College of DuPage, I mean, that's clear. If you're saying it's just superfluous, it should be abundantly clear. Well, I guess that's the question I was asking. There is a separate section of the statute that Justice Burke referred to earlier that allows a stay-away provision just based on the residence, even if the petitioner is not there. That's what B2 authorizes. Correct. So anyway. And again, my response to that initially was two separate points. I don't think that that issue was raised in the brief by the defendant. And also, the intent of the legislature to reduce the access of defendants to victims shows what, for lack of a better term, what the legislature intended this act to do. And that's the way that it was imposed by the forum, by the chief judges. That's the way it was imposed by the trial court when he was found guilty and given courtship. So it should have a broader construction based upon the intent of the statute. And that's what it says. That's what the Domestic Violence Act says. It should be interpreted broadly to meet its goals. And the main goal that we're looking at here is to avoid abuse and reduce access to victims. So this court was wrong in strictly construing it in damage. I think – I don't want to go that far, but I think that the intent of the legislature is clear. You have to read this statute in a particular way, and you have to read it – you have to liberally construe it. Let me ask you something. I'm looking at this order and I'm saying – what I'm reading is don't ever go within 1,000 feet of College of DuPage. And by the way, if she happens to be present, don't go on the property. Forget the 1,000 feet then. If she's present, it's a little bit more restrictive. It's like don't ever go on the property. Right? Right. Okay. What is the purpose that's served by saying if she's not there, don't go within 1,000 feet of COD? Well, that's a very good question. And that was – the theory behind that – and I realize the time – That's okay. You can answer it. The theory behind that is in the Massachusetts case that I cited. We don't want a situation where a defendant is calling up a person's place of employment. Is the victim there? Is the victim there? I want to come to this area. The point is we don't want these defendants to know the victim's class schedule. We don't want them to know when they are in a place and when they are not in a place because our intent is to avoid abuse. Our intent is to reduce access to victims. So we want the defendant to just stay away from certain areas. So if she's there, if you know she's there, don't go on the premises. But if you don't know that she's there, don't even go to the Starbucks across the street. Right. It seems like it would be the reverse. It would be like, you know, if we know that she's there, don't even – we're going to set up a 1,000-foot perimeter. Don't go to the Starbucks because she might be at the Starbucks because we know she's in the area. Right? Kind of. I can see your point. A larger perimeter for when she's there as opposed to when she's not there. But this is kind of the reverse. The intent is to – let me think about that for a second. When you look at how the Massachusetts court interpreted their statute, which is obviously different than ours, we are trying to avoid a situation where, like in that case, in the Massachusetts case, someone is going outside of someone's employment, you know, being disruptive, honking the horn, trying to have access to the victim. By pointing out that widened at that 1,000 feet, that doesn't let a defendant do that. That doesn't let a defendant assume that she's not there and I can go, you know, go to her school, go to her – in all these places that are listed, daycare, place of employment, residence. Thank you, Mr. French. Thank you. With that, Your Honors, I would ask you to adjourn for the final hearing. Pleasure. You may proceed. Your Honors, let's go back a second to see what this guy is charged with. The complaint is on page 5 of the record. And it says the defendant did not only enter the property of College of DuPage, which is a violation of remedy R03, which includes both 2A and 2B. Then it says prohibited from entering or remaining at place of employment, school, or other specified places. If you then look at R03, which includes, like I said, 2A and 2B, the language of entering and remaining appears in 2B, not in 2A. So what – I mean, it's all great. We're all against domestic violence. We're all in favor of protecting victims and all this kind of stuff. But the defendant still has a right to prove guilty beyond a reasonable doubt of the charges that's before the court. The charge was a violation of Rule 3. There was ambiguity there because it said ambiguous. Let it apply. Why does it apply? Because the courts tell us – this court has told us that we interpret these protection orders like we interpret statutes. And if statutes are ambiguous, then any doubt goes to the defendant. I'm kind of glad the state brought up the Massachusetts case because it's not at all like the case here. In that case, the defendant drove to where the protective person worked, not in a whole lot of detail about what kind of place it was, but went to her place of office, started honking the horn. When he realized there were people there, he started swearing and causing a scene. My client here, apart from driving a car with a license plate that was expired, my client did not violate any laws. He didn't cause a scene. He was simply there, dropped off a friend, and drove away. The state, again, loves to keep bringing up this Domestic Violence Act. It says the purpose, as the state says in page 8 of their brief, is to support the efforts of victims of domestic violence to avoid further abuse. We don't know where the victim of violence was in this case. We don't know if she was at home. We don't know if she was at the page. We don't know if she was in Cleveland or in Europe, for all we know. But there's no evidence she was there. And because there was no evidence there that she was there, my client couldn't have violated Rule 2B, which was what he was charged with. The state says that the evidence in this case is clear, it's compelling, uncontroverted. We agree, and that's why we say our client's entitled to reversal of the judgment. Thank you. Thank you, Your Honor. We'd like to thank the attorneys for their arguments today. This will be taken under advisement, and we are adjourned.